NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHRISTOPHER FAVORITO, an infant by his father and natural guardian, PAUL FAVORITO,

    Plaintiff,

v.

MARLBORO TOWNSHIP, *et al.*,

    Defendants.

Civil Action No. 12-7348 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    Now before the Court is the motion of Defendant Rite Aid of New Jersey, Inc. ("Rite Aid") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Def.'s Mot., ECF No. 21.) Plaintiff filed opposition to the motion (Pl.'s Opp'n, ECF No. 30), and Defendant replied (Def.'s Reply, ECF No. 31). The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Defendant's motion is granted.

**I.**    **Background**

    **A.**    **Overview**

    Plaintiff Christopher Favorito ("Favorito" or "Plaintiff") commenced this action to obtain monetary damages for "serious psychological injuries" he allegedly suffered as a result of his

arrest and prosecution for shoplifting.[1] (Compl. ¶¶ 23, 26.) His federal claims against Marlboro Township, the Marlboro Police and the Freehold Regional High School District have been resolved. (Stipulations, ECF Nos. 13, 19.)

The instant motion concerns Favorito's remaining New Jersey state law claim against Rite Aid for malicious prosecution. According to Favorito, the Rite Aid employee whose accusation led to his arrest and prosecution for shoplifting knew or should have known that he was innocent of the charge. Favorito contends that Rite Aid is liable in tort for his alleged psychological injuries.

### B. Material Facts

On March 16, 2011, Favorito attended an after-school tutoring session at Marlboro High School, where he was a freshman. When the session ended, he agreed to walk with his friend and classmate Brandon Cook to a nearby Rite Aid. (C. Favorito Dep. 21-24.) Inside the store, Cook removed a box containing a home-drug test kit from the shelves, emptied the contents into his knapsack, and dropped the empty box. (Pacachamango Dep. 6-21.) Favorito, who was standing with Cook, was not sure what his companion had done but thought it "was something wrong." (C. Favorito Dep. 21-28.)

Assistant Store Manager Ivette Pacachamango shared Favorito's suspicion. Trailing the youths through the store, she discovered the discarded box on the ground. (Pacachamango Dep. 19-20.) Pacachamango ordered a colleague to call the police and started after Favorito and Cook, who were heading toward the store's exit. (Pacachamango Dep. 22.) Pacachamango stopped the youths on the sidewalk in front of the store and confronted them with the empty box. (*Id.* at 20-21; C. Favorito Dep. 33.) As Cook withdrew the stolen drug test kit from his bag, Favorito insisted he had not been involved in the theft. (C. Favorito Dep. 33-35; Pacachamango Dep. 21.)

---

[1] Actually, Favorito's father, Paul Favorito, commenced this action on his son's behalf.

While Cook was returning the merchandise, a second store employee came outside to inform Pacachamango that the police would arrive shortly. (Pacachamango Dep. 21-22.) Overhearing this exchange, Cook and Favorito fled in different directions. (*Id.* at 29-30; C. Favorito Dep. 29.) Favorito headed toward the school. (C. Favorito Dep. 37.)

Police officers arrived at the store minutes later. The officers listened to Pacachamango's account of the incident and viewed security camera footage of the youths' brief interaction with her outside the store. (Pacachamango Dep. 32-36.) Pacachamango described the culprits and reported that one had run off in the direction of the school. (Pacachamango Dep. 31-32.)

Favorito, meanwhile, had changed his clothes in the school locker room and was waiting for his father in the lobby. (C. Favorito Dep. 37.) The disguise was ineffective. Favorito was still waiting at the school when a police officer recognized him. (*Id.* at 38-39.) Two officers subsequently questioned Favorito in the presence of the school's Principal and Vice Principal. (*Id.*) Favorito called Cook, who agreed to meet him at the school. (*Id.* at 42-43.) Both Cook and Favorito were subsequently cuffed, seated in the back of a police cruiser, and transported to the police station where they were held for about an hour. (*Id.* at 47-48, 68-69.)

They were still in custody when Pacachamango arrived at the station to formally charge them with shoplifting. (Pacachamango Dep. 46-49, 59.) At a subsequent appearance before a juvenile court judge, Cook stated that he had been solely responsible for the theft. Cook's "confession" prompted the judge to dismiss the charge against Favorito. (C. Favorito Dep. 73-75.)

The incident left Favorito with recurring nightmares and a persistent sense of humiliation and anger. In the opinion of a psychologist who evaluated Favorito in connection with this suit,

3

Favorito will need long-term treatment to overcome the "moderate" psychological distress he suffered as a result of his arrest and prosecution. (Def.'s Mot., Exh. D, at 2.)

## II. Legal Standard

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). In evaluating the evidence, the Court is "required to view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). However, where the party opposing summary judgment ultimately bears the burden of proof as to a dispositive issue, that party "bears the burden of production under Rule 56 to 'designate specific facts showing that there is a genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party cannot rely on unsupported assertions or bare allegations to defeat summary judgment. *See Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 308 (3d Cir. 2008).

## III. Analysis

To prevail on a malicious prosecution claim in New Jersey, the plaintiff must establish "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Epperson v. Wal-Mart Stores, Inc.*, 862 A.2d 1156, 1160 (N.J. Super. Ct. App. Div. 2004) (internal quotation marks omitted). The parties' dispute here focuses on the third element – probable cause.

Probable cause exists when there are "reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious [person] in the

belief that the accused is guilty of the offen[s]e with which he is charged." *Trabal v. Wells Fargo Armored Svc. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001) (quoting *Lind v. Schmid*, 337 A.2d 367, 369 (N.J. 1975)). "Under New Jersey law, where the underlying facts in a malicious prosecution action are not disputed, the existence of probable cause is an issue of law." *Id.*

Based on the uncontested facts before the Court, a reasonable person in Pacachamango's position would have suspected Favorito of shoplifting. Favorito entered the Rite Aid store with Cook, stood a few feet away as Cook secreted merchandise into his bag, accompanied his friend out of the store when the theft was completed, and chose to flee rather than face the police after Pacachamango exposed the crime. In light of these facts, no rational factfinder could find fault in Pacachamango's decision to press charges against both Favorito and Cook.

In his opposition to summary judgment, Plaintiff asserts that it was unreasonable for Pacachamango to suspect Favorito of shoplifting once she discovered the stolen drug test kit in Cook's knapsack. According to Plaintiff, Cook's possession of the merchandise "absolved Christopher Favorito from any culpability[.]" (Pl.'s Opp'n 9.) Plaintiff's argument appears to rest on the assumption that only one of the youths, either Cook or Favorito, could have been held legally responsible for stealing the drug test kit. This is not the case. Under New Jersey law, defendants may be convicted of aiding and abetting shoplifting even if they are not caught in possession of pilfered goods. *See, e.g.*, *State v. Harabi*, No. 9-12-2361, 2013 WL 1285439, at *4-5 (N.J. Super. Ct. App. Div. April 1, 2013) (trial judge erred in not instructing jury to consider whether defendant was guilty as an accomplice to shoplifting); *State v. McCrae*, No. 6-11-1045, 2010 WL 2867936, at *3-4 (N.J. Super. Ct. App. Div. July 22, 2010) (upholding defendant's conviction as accomplice to shoplifting).

More importantly, the record establishes that Pacachamango believed both Favorito and Cook were responsible for the theft. There was nothing unreasonable about this belief. Cook and Favorito entered the Rite Aid together, remained together inside the store, left the store together, and, after the confrontation with Pacachamango, fled together to avoid the police. These circumstances would persuade an "ordinarily cautious [person]" that the youths acted in concert. *See Trabal*, 269 F.3d at 249.

Pacachamango had probable cause to press charges against Favorito for shoplifting. Accordingly, Plaintiff's malicious prosecution claim fails.

IV. **Conclusion**

For the reasons set forth above, and for other good cause shown, Defendant's Motion for Summary Judgment is GRANTED. An appropriate order follows.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 3/17/14